UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOHN E. STANLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:11-CV-00248 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff John Stanley appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Stanley applied for DIB and SSI in April 2007, alleging disability as of the first day of that month. (Tr. 134-40.) The Commissioner denied his application initially and upon reconsideration, and Stanley requested an administrative hearing. (Tr. 60-119.) On November 10, 2009, a hearing was conducted by Administrative Law Judge ("ALJ") Bryan Bernstein, at which Stanley (who was represented by counsel) and a vocational expert testified. (Tr. 28-59.) On July 2, 2010, the ALJ rendered an unfavorable decision to Stanley, concluding that he was

---

[1] All parties have consented to the Magistrate Judge. (Docket # 11); *see* 28 U.S.C. § 636(c).

not disabled because he could perform a significant number of unskilled light work jobs in the economy. (Tr. 14-23.) The Appeals Council denied his request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3.)

Stanley filed a complaint with this Court on July 25, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) In his appeal, Stanley advances essentially two arguments: (1) that the ALJ erred at step three by finding that he did not meet or equal Listing 1.04, Disorders of the Spine; and (2) that the ALJ improperly discounted the credibility of his symptom testimony.[2] (Docket # 13.)

## II. FACTUAL BACKGROUND[3]

### A. Background

At the time of the ALJ's decision, Stanley was forty-six years old; had a high school education; and possessed work experience as a delivery driver, hardware clerk, and construction worker. (Tr. 22-23, 37, 134, 159.) Stanley alleged in his DIB application that he is disabled due to blindness in his left eye, back and neck degenerative disk disease, and migraine headaches. (Tr. 158.)

At the hearing, Stanley testified that he lives independently in a house (Tr. 43), and that he stopped working in construction after he was injured in a car accident in January 2006 (Tr. 32-34). After the accident, he worked part-time in a hardware store; the owner, who was a

---

[2] Stanley also argues that the ALJ erred by: (1) failing to assign controlling weight to the results of the MRI reports ordered by Dr. Lee, his treating physician, showing spinal stenosis; and (2) failing to consider his spinal stenosis when determining his residual functional capacity ("RFC"). However, as will be discussed *infra* in footnote 8, these arguments are subsumed in Stanley's step-three and credibility arguments and ultimately are of no moment.

[3] In the interest of brevity, this Opinion recounts only the portions of the 449-page administrative record necessary to the decision.

family friend, did not let him do any heavy lifting and was flexible in letting him go home if he got a headache. (Tr. 7, 34-35, 38, 183.) He drives a pickup truck, but states that he "feel[s] every bump in the road" and thus does not drive long distances. (Tr. 44.) His sister helps him with household tasks such as vacuuming, but he does his own grocery shopping and meal preparation. (Tr. 44.) He regularly goes to visit a friend who also has physical limitations. (Tr. 52.)

Stanley stated that he has headaches two or three times a week and that he has constant neck and low back pain, which worsens when he walks or bends over with his hands raised. (Tr. 40-41, 47-48.) In that regard, he reported that his knees almost give out when he stands at the sink to brush his teeth and that "if it wasn't for the cabinet in front of [him], [he would] probably fall." (Tr. 40-41.) He stated that he cannot walk very far without having to sit down and that he usually props his feet up when sitting (Tr. 47, 51); however, if he sits too long, he gets "tensed up." (Tr. 48.) He also articulated that his shoulders "bother [him] constantly." (Tr. 46.) To reduce his pain, he takes several medications and sits in a hot tub several times a day. (Tr. 41, 49.) Stanley also represented that he feels depressed and has problems with his concentration and memory, that he has tunnel vision in his left eye from a prior injury, and that his ears constantly ring. (Tr. 48-50, 52.)

### B. *Summary of the Relevant Medical Evidence Before the ALJ*

In January 2006, Stanley was in an auto accident in which he injured his neck and back. (Tr. 279.) An x-ray of his neck did not indicate a fracture but did show degenerative cervical spondylosis from C3 to C7. (Tr. 278.)

In February 2006, Stanley visited Dr. Thomas Lee, his family physician, due to complaints of neck and right knee pain. (Tr. 320.) Dr. Lee diagnosed him with cervical

3

strain/sprain and right knee pain and prescribed medication; an x-ray of his knee was negative. (Tr. 320, 328.) Stanley complained of radiating neck pain and headaches through May 2006, but had normal neurological exams. (Tr. 286-89.) An April 2006 MRI of his neck showed mild to moderate neural foraminal stenosis and moderately pronounced spondylotic changes from C3-4 to C6-7 and mild to moderate central canal stenosis at C5-6 without spinal cord compression, but no disk herniation at any level. (Tr. 364-65.) An MRI of his low back showed a moderate disk bulge with mild foraminal narrowing but no significant central canal stenosis at L5-S1, mild central canal stenosis at L4-5 from a disk bulge and mild central disk protrusion, a minor disk bulge with no stenosis at L1-2, and degenerative disk disease at these three levels. (Tr. 275-76.)

In May 2006, Stanley visited Sherry Stohler, a nurse practitioner in Dr. Lee's office. (Tr. 283-85.) He told her that his neck pain was "extremely improved" after attending physical therapy, but that he still had moderate low back pain; his pain kept him from pursuing normal construction jobs but he was picking up odd jobs on the side. (Tr. 283.) Nurse Stohler observed that Stanley had some decreased range of motion in his back, but a negative straight leg raising test and normal sensation, reflexes, and muscle strength. (Tr. 284.) Stanley reported that Tylenol and a muscle relaxant were mildly helpful. (Tr. 283.)

The next month, Stanley told Nurse Stohler that a lumbar steroid injection was only temporarily helpful, but that physical therapy and medications seemed to be relieving his pain. (Tr. 279-80.) He had mild low back pain upon movement of the lumbar spine, but full range of motion. (Tr. 280.) He displayed a mild limp on his left side, but normal balance and gait; a straight leg raising test was negative. (Tr. 279-80.)

In June 2006, Dr. Julius Silvidi, a neurosurgeon, examined Stanley. (Tr. 292-94.) He

4

observed that Stanley had normal gait, sensation, and reflexes, and that lateral bending and lumbar flexion were negative for aggravation of pain. (Tr. 293.) A straight leg raising test was negative. (Tr. 293.) After obtaining a discogram, Dr. Silvidi opined that a lumbar fusion had only a two-thirds chance of reducing his pain. (Tr. 292.) The following month, Stanley received another steroid injection and was referred to vocational rehabilitation. (Tr. 264-72.) A December 2006 CT scan of Stanley's low back showed disk space narrowing, bone spurs, a disk bulge, mild canal stenosis at L5-S1, and a small protrusion with mild canal stenosis at L4-5, but no significant stenosis at the remaining levels. (Tr. 346-47.)

In March 2007, Stanley visited Dr. John Shay at the Indiana Back Center for his neck and low back pain. (Tr. 313-14.) Dr. Shay observed that Stanley had slight tenderness in his neck and low back, but full range of motion; normal motor strength, sensation, and reflexes; a negative straight leg raising test; and no evidence of nerve root compression. (Tr. 313-14.) He assigned him a diagnosis of chronic cervical and lumbar syndromes and recommended he undergo a facet denervation procedure. (Tr. 314.) Dr. Shay further opined that if the procedure was unsuccessful, Stanley should seek treatment through a pain management physician who could manage his use of pain medications over a longer period of time. (Tr. 314.)

The following month, Dr. Bruce Van Drop reported that Stanley responded well to the lumbar facet joint injections and nerve blocks that were administered several months earlier. (Tr. 330, 336-40, 347-52, 385-98.) He also administered radio frequence nerve ablation at the L2 through L5 levels of the lumbar spine. (Tr. 330, 367-76.)

In June 2007, Stanley underwent a mental status examination by Ceola Berry, Ph.D. (Tr. 243-45.) He demonstrated adequate attention and concentration, average intelligence, intact

5

short term memory but compromised long term memory. (Tr. 244.) She chose not to assign him a diagnosis and rated his Global Assessment of Functioning ("GAF") score at 69, indicating mild symptoms.[4] (Tr. 245.)

In July 2007, Dr. Abbas Rampurwala, a consulting physician, examined Stanley. (Tr. 260-62.) He told Dr. Rampurwala that he could drive for twenty-five minutes, sit for thirty minutes, walk one block, climb three steps, and lift thirty pounds with either arm; he thought he could mow the lawn in thirty-five minutes if he took several breaks. (Tr. 260.) Dr. Rampurwala observed that Stanley had full range of motion and normal gait, sensation, muscle strength, tone, reflexes, grip strength, and straight leg raising tests; he could heel-toe walk and squat. (Tr. 262.) Dr. Rampurwala diagnosed Stanley with post-traumatic low back pain with L5-S1 spondylosis on imaging and continued back pain despite treatment. (Tr. 262.) He opined that Stanley was not a surgical candidate and had at least a mild physical impairment from his back pain. (Tr. 262.)

In August 2007, Dr. Fernando Montoya, a state agency physician, reviewed Stanley's records and found that he did not have a severe physical impairment. (Tr. 240.) A second state agency physician later affirmed this opinion. (Tr. 242.)

In 2008, Dr. Lee saw Stanley every three months for a recheck and medication refill. (Tr. 433-37.) In December, Stanley told Dr. Lee that his back pain was about the same but that his neck pain had increased. (Tr. 435.) Stanley also said that his pain medication was effective most

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). And, a GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*.

of the time. (Tr. 433.) Dr. Lee continued to prescribe medications.[5] (Tr. 433-40.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

---

[5] On August 10, 2010, Dr. Lee penned a letter indicating that Stanley had limited range of motion and a long history of degenerative disk disease and joint disease in his cervical, thoracic, and lumbar spines. (Tr. 448.) Dr. Lee opined that Stanley could not lift, stoop, bend, crouch, or kneel; could walk or climb ramps for a short duration; could sit or stand for fifteen minutes; and could climb stairs without difficulty. (Tr. 448.) This letter, however, was not before the ALJ, as Stanley submitted it *after* the ALJ had rendered his decision in July 2010. Of course, "the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him." *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (explaining that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him").

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it

---

[6] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

8

shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. *The ALJ's Decision*

On July 2, 2010, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 14-23.) He found at step one of the five-step analysis that Stanley had not engaged in substantial gainful activity since his alleged onset date and at step two that he had severe impairments. (Tr. 16.) At step three, the ALJ determined that Stanley's impairment or combination of impairments was not severe enough to meet a listing. (Tr. 16-18.)

Before proceeding to step four, the ALJ determined that Stanley's symptom testimony was not reliable to the extent it portrayed limitations in excess of the following RFC:

> This individual is not able to perform work that imposes close regimentation of production. Close regimentation of work activity is a consequence of certain operational demands for functioning within close tolerances or for an unusually rapid level of productivity. Such work is characterized by close and critical supervision that might be required when there is a high value placed by the employer on the product quality, the raw materials, the equipment employed, or upon coordination with other workers and the pace of production. Close and critical supervision in this context would produce unacceptable distress. This work is different from jobs that allow the employee some independence in determining either the timing of different work activities, or the pace of work. Such flexibility as that in the work structure permits the employee an opportunity to catch up with ordinary productivity, especially when there has been a respite.
>
> This person would require the option to sit or stand while working. Relevant impairments would prevent this person from standing and walking longer than 50% of the 8 hour work-day. He cannot lift and carry more than 20 pounds occasionally and 10 pounds frequently. This person cannot engage in prolonged walking or standing, e.g., for 20 minutes. This person has impaired vision in his left eye.
>
> This person cannot reach extreme postures (stooping, kneeling, bending, etc.) more often than occasionally. This person cannot successfully engage in work demanding constant manipulation involving fine work, gripping, grasping, twisting, turning, picking, pushing, or pulling with hands or fingers. This individual cannot undertake work in hazardous conditions. Such work would include work requiring balance in the context of unprotected heights. The

9

individual cannot work around dangerous machinery or around vehicles moving in close quarters.

(Tr. 19-20.)

Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four that Stanley was unable to perform any of his past relevant work. (Tr. 21-22.) The ALJ then concluded at step five that he could perform a significant number of unskilled light work jobs within the economy, including laundry folder, mail clerk, and hand trimmer plastic parts. (Tr. 22-23.) Accordingly, Stanley's claims for DIB and SSI were denied. (Tr. 23.)

### C. The ALJ's Conclusion That Stanley Did Not Meet or Equal Listing 1.04 Is Supported by Substantial Evidence

Stanley first challenges the ALJ's step-three finding that he did not meet or equal Listing 1.04, Disorders of the Spine, asserting that the ALJ erred when he stated there was no evidence of spinal stenosis. The ALJ did indeed error in this respect; nevertheless, the ALJ's oversight is harmless because Stanley fails to show that he satisfies all the other criteria of Listing 1.04.

To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999). "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." *Caviness v. Apfel*, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998). The criteria of Listing 1.04, in relevant part, is as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> 
>   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or . . . .

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpart P, App. 1, 1.04A.

Specifically, as to medical equivalence, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Booth v. Comm'r of Soc. Sec.*, No. 1:06-cv-122, 2008 WL 744230, at *11 (S.D. Ohio Mar. 19, 2008) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Medical equivalence requires that there be a medical finding equivalent to *each and every criterion* for a particular impairment." *Jackson v. Sullivan*, No. 91 C 7975, 1992 WL 142614, at *5 (N.D. Ill. June 10, 1992) (emphasis added) (citing *Zebley*, 493 U.S. at 531); *see Bellmore v. Astrue*, No. 4:08-cv-94, 2010 WL 1266494, at *14 (N.D. Ind. Mar. 25, 2010) ("A claimant must meet the criteria in the capsule definition, as well as the criteria in the subsidiary paragraphs." (citations omitted)). The claimant bears the burden of proving his condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 483; *Maggard*, 167 F.3d at 379-80.

Here, the ALJ specifically contemplated Listing 1.04, but observed that the evidence did not satisfy the Listing's criteria. (Tr. 17.) More particularly, the ALJ stated:

The claimant is able to ambulate effectively without using assistive devices in both upper extremities. He can use at least one upper extremity effectively for gross and fine movements. The claimant does not have loss of strength, sensation, or reflexes or other evidence of nerve root compression or spinal

11

> stenosis, and he does not have positive straight leg raising sign. He does not meet the criteria for spinal disorders in listing 1.04.

(Tr. 17.) Stanley attacks the ALJ's rationale for his step-three finding, arguing that his MRI reports did indeed show spinal stenosis.

As Stanley emphasizes, the results of the MRIs and CT scans of his spine indicate evidence of mild to moderate spinal stenosis. (Tr. 275, 309, 326, 346.) The ALJ's oversight, however, ultimately does not necessitate a remand of his step-three finding. *See Skarbek v. Barnhart*, 390 F.3d 500, 5004 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case"). To reiterate, Stanley "bears the burden of presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Booth*, 2008 WL 744230, at *11 (emphasis in original) (quoting *Zebley*, 493 U.S. at 530); *see Gonzales v. Astrue*, No. 2:09-cv-573, 2010 WL 5811902, at *8 n.9 (D. Utah Oct. 27, 2010) (same); *Carrillo v. Astrue*, No. SA-09-CA-44-XR, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (same). A claimant's impairment cannot meet the criteria of a listing based only on a diagnosis. 20 C.F.R. §§ 404.1525(d), 416.925(d).

In that regard, although the spinal stenosis criteria of Listing 1.04 is met, there is no evidence that Stanley satisfies the remaining criteria of either subsection A or C. With respect to Listing 1.04A, the ALJ pointed out that there was *no* evidence that Stanley had experienced loss of strength, sensation, or reflexes, or a positive straight leg raising test—required criteria for the Listing. In particular, the ALJ observed elsewhere in his decision that upon examination Stanley's motor function was generally found to be within normal limits (Tr. 21 (citing Tr. 260-63, 293, 313-14)), and Stanley fails to cite to any evidence that undercuts the ALJ's findings concerning lack of motor loss. This is fatal to his argument. *See, e.g., Callaway v. Astrue*, No.

12

1:10-cv-01245, 2012 WL 1014833, at *8 (S.D. Ind. Mar. 22, 2012) (affirming the ALJ's step-three finding that claimant failed to meet or equal Listing 1.04A where claimant failed to produce evidence of motor loss accompanied by sensory or reflex loss); *Abbott v. Astrue,* No. 10-921-CJP, 2011 WL 5834529, at *6-7 (S.D. Ill. Nov. 21, 2011) (same); *Franks v. Comm'r of Soc. Sec.*, No. C-1-06-810, 2008 WL 648719, at *6 (S.D. Ohio Mar. 10, 2008) (same); *Freeman v. Barnhart*, No. 05-1287-JTM, 2006 WL 4059099, at *4 (D. Kan. Aug. 2, 2006) (same).

Likewise, with respect to Listing 1.04C, Stanley makes no attempt to show that he exhibits "ineffective ambulation." An inability to ambulate effectively is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 404, Subpart P, App. 1, 1.00B2b(1). Examples of ineffective ambulation include an inability to walk without a walker or two crutches, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, and the inability to carry out routine ambulatory activities, such as shopping and banking. 20 C.F.R. § 404, Subpart P, App. 1, 1.00B2b(2). Therefore, Stanley failed to carry his burden of showing that he met or equaled all of the criteria of Listing 1.04A or C. *See, e.g., Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (rejecting claimant's assertion that she met a listing where "none of the evidence that [she] contends the ALJ ignored or misstated establishes that her impairments met or equaled in severity the criteria under [the] listings").

Moreover, in reaching his decision, the ALJ relied upon the assessment of the state agency physicians, who concluded that Stanley's impairments did not meet or equal a listing. The state agency physicians completed Disability Determination and Transmittal forms at the

13

initial and reconsideration levels and concluded that Stanley was not disabled. (Tr. 60-63.) The Seventh Circuit Court of Appeals has articulated that "[t]hese forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citations and internal quotation marks omitted). Consequently, "[t]he ALJ may properly rely upon the opinion of these medical experts." *Id.* (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); *see also* SSR 96-6p, 1996 WL 374180, at *2.

Accordingly, Stanley fails to carry his burden of establishing that he satisfies all of the criteria for Listing 1.04. *Booth*, 2008 WL 744230, at *11 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify." (citing *Zebley*, 493 U.S. at 530)); *see Bellmore*, 2010 WL 1266494, at *14 (same). The ALJ's step-three finding that Stanley did not meet or equal a listing is supported by substantial evidence.

### D. The ALJ's Credibility Determination Will Not Be Disturbed

Stanley also contends that the ALJ improperly discounted the credibility of his symptom testimony. This assertion, however, is no more successful than his foregoing step-three argument.

Credibility determinations are the second step in a two-step process prescribed by the regulations for evaluating a claimant's request for disability benefits based on pain or other symptoms. *Williams v. Astrue*, No. 1:08-cv-1353, 2010 WL 2673867, at *9-10 (S.D. Ind. June 29, 2010); *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. First, the ALJ must determine whether there is an underlying medically

14

determinable physical or mental impairment—that is, an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. *Krontz v. Astrue*, No. 1:07-cv-00303, 2008 WL 5062803, at *5 (N.D. Ind. Nov. 24, 2008); *Williams v. Chater*, 915 F. Supp. 954, 964 (N.D. Ind. 1996); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. If the record does not allow the ALJ to make such a finding, then that ends the inquiry, for a finding of disability cannot be made solely on the basis of the claimant's symptoms, even if they appear genuine. SSR 96-7p.

If, however, the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p; *see Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Bellmore*, 2010 WL 1266494, at *10; *Walker v. Astrue*, No. 4:09-cv-44, 2010 WL 1257441, at *5 (S.D. Ind. Mar. 25, 2010); 20 C.F.R. §§ 404.929(c), 416.929(c). "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and

logical bridge between the evidence and the result," *Ribaudo*, 458 F.3d at 584, his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, although the ALJ's phraseology was a bit confusing at the first step of the two-step process, he did ultimately conclude that Stanley had an underlying medically determinable physical impairment that could reasonably be expected to produce his alleged symptoms. (Tr. 19); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Therefore, the ALJ did not error by ending his inquiry after step one, but instead properly proceeded to step two to evaluate the functionally limiting effects of Stanley's alleged symptoms to determine the extent to which they would affect his ability to do basic work activities. *See Herron*, 19 F.3d at 334; 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. In doing so, the ALJ considered the various factors prescribed by 20 C.F.R. §§ 404.1529(c) and 416.929(c), ultimately concluding that Stanley's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely reliable.

In assessing the credibility of Stanley's complaints, the ALJ thoroughly considered the various medical source opinions and the objective medical evidence. (*See* Tr. 19 (discussing Stanley's left eye blindness, neck pain, and headaches), 20 (discussing Stanley's concentration, memory, judgment, and depression), 21 (discussing Stanley's range of motion, strength, posture,

16

gait, ambulation, and postural movements).) For example, the ALJ observed that although Stanley testified that he had headaches two to three times a week, treatment records from Dr. Lee contain only occasional complaints of headaches and Stanley was never prescribed any prophylactic medication for them. (Tr. 19.) The ALJ further considered that Stanley's examinations by Dr. Rampurwala, Dr. Silvidi, and Dr. Shay all indicated negative straight leg raising tests; full range of motion; and normal muscle spasms, normal strength, reflexes, sensation, posture, and gait. (Tr. 21 (citing Tr. 262, 293-94, 313-14).)

Of course, an ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility, and "may properly discount portions of a claimant's testimony based on discrepancies between [the c]laimant's allegations and objective medical evidence." *Crawford v. Astrue*, 633 F. Supp. 2d 618, 633 (N.D. Ill. 2009); *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p.

The ALJ also considered Stanley's activities of daily living when assessing the credibility of his symptom testimony, concluding that they "suggest that he is not as limited as he alleges." (Tr. 21.) The ALJ specifically noted that Stanley lives independently, drives, shops, and cares for his own needs. (Tr. 21); *see Schmidt*, 395 F.3d at 746-47 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p. In addition, he observed that Stanley worked as a

17

hardware clerk for many months after his accident which suggested that he had a "fair amount of capacity," even though the owner did not require him to do any heavy lifting.[7] (Tr. 19; *see also* Tr. 21 (finding that his work in the hardware store indicated a "sufficient capacity for a limited range of light work").) "Although the diminished number of hours per week indicated that [Stanley] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008).

The ALJ also observed from a brief note in the record, and then confirmed at the hearing, that Stanley's treating pain management providers encouraged him to look for vocational training (and by inference, for work opportunities). (Tr. 19 (citing Tr. 266), 37); *see Stevenson v. Chater*, 105 F.3d 1151, (7th Cir. 1997) ("The ALJ was entitled to make reasonable inferences from the evidence before him . . ., and this inference was eminently reasonable." (citation omitted)). Although vocational rehabilitation apparently was unsuccessful (Tr. 37), the ALJ did not err in considering this evidence.

The ALJ also found that although Stanley denied performing odd jobs after his accident, the record reflects that just five months after the accident he told Dr. Lee's nurse practitioner that he indeed was performing odd jobs. (Tr. 21; *compare* Tr. 35, *with* Tr. 283.) Of course, an ALJ is entitled to consider evidence of any inconsistent statements by the claimant. *See Kornfield v. Apfel*, No. 00C 5642, 2003 WL 103009, at *4 (N.D. Ill. Jan. 9, 2003) (discounting a claimant's credibility due to her inconsistent statements); SSR 96-7p ("One strong indication of the

---

[7] The owner of the hardware store indicated that "it was very hard for [Stanley] to maintain his work *while standing*." (Tr. 7 (emphasis added).) Accordingly, the ALJ incorporated a sit-to-stand option in Stanley's RFC and prohibited him from work that required standing or walking for longer than twenty minutes at a time. (Tr. 19-20.) The vocational expert then indicated that this was the only limitation that prevented Stanley from returning to work as a hardware clerk. (Tr. 55.)

18

credibility of an individual's statements is their consistency . . . .").

In addition, the ALJ observed that Stanley had received relatively conservative treatment measures for his back pain. (Tr. 21.) The ALJ is entitled to consider the type of treatment that a claimant has undergone when determining that claimant's credibility. *See Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) (affirming the ALJ's discounting of claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition); 20 C.F.R. §§ 404.929(c)(3), 416.929(c)(3) (considering a claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); SSR 96-7p; *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009).

Moreover, the ALJ did indeed credit Stanley's subjective symptom testimony to some extent, acknowledging that he had severe impairments. *See generally Hodges v. Astrue*, No. 1:09-cv-00216, 2010 WL 3717256, at *9 (N.D. Ind. Sept. 14, 2010) (explaining that the relevant inquiry is whether the claimant's pain "was of a disabling severity" during the relevant period, not the diagnosis that he was assigned). Accordingly, to accommodate his various limitations, the ALJ restricted Stanley to light work with a sit-to-stand option that requires standing or walking no more than twenty minutes at a time; occasionally reaching extreme postures such as stooping, kneeling, or bending; and no constant manipulation with the hands or fingers, close regimentation of production, or exposure to hazardous conditions. (Tr. 19-20); *see, e.g.*, *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming ALJ's credibility determination where he discredited the claimant's symptom testimony only in part).

In sum, the ALJ adequately considered the credibility of Stanley's symptom testimony in

accordance with the factors identified in 20 C.F.R. §§ 404.1529(c) and 416.929(c) and ultimately determined that they were not of disabling severity. In doing so, the ALJ adequately built an accurate and logical bridge between the evidence and his conclusion, and his determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435. Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.[8]

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Stanley.

SO ORDERED. Enter for this 6th day of April, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[8] As explained *supra* in footnote 2, Stanley also argues that the ALJ erred by failing to assign controlling weight to the MRI reports ordered by Dr. Lee, his treating physician, showing mild or moderate spinal stenosis. Stanley's argument, however, is unavailing, as the diagnosis of an impairment does not alone establish its severity and its resulting limitations. *See Carradine*, 360 F.3d at 754 ("The issue in the case is not the existence of these various conditions of [claimant's] but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time."); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that [claimant] had received a diagnosis of fibromyalgia . . ., since fibromyalgia is not always (indeed, not usually) disabling."). As the ALJ correctly observed, at the time he made his decision (*see* footnote 5 *supra*), there was no medical source statement of record from Dr. Lee, or, for that matter, any other treating physician, assigning Stanley specific physical limitations (Tr. 20), and Stanley fails to demonstrate how "assigning controlling weight" to the MRI evidence ordered by Dr. Lee has any impact on the ALJ's decision, other than with respect to his step-three analysis. Therefore, Stanley's argument concerning the ALJ's consideration of Dr. Lee's opinion is a nonstarter.

For these same reasons, Stanley's argument that the ALJ failed to consider his spinal stenosis when assigning his RFC—which he abandoned in his reply brief (Docket # 23)—is of no moment. The ALJ properly considered the limitations and pain arising from Stanley's back problems, together with his activities of daily living, treatment, and work history, when assigning him a RFC. (*See* Tr. 19, 21.) To reiterate, "[t]he issue for disability benefits is not whether a claimant has a disease, but whether that disease affects [his] ability to work." *Buchholz v. Astrue*, No. 08-cv-4042, 2009 WL 4931393, at *11 (C.D. Ill. Dec. 15, 2009) (citing 20 C.F.R. § 404.1545(a)(1)).